for oral argument against Petitioner-Appellant Stephen West and Petitioner-Appellant Stephen West. Good afternoon, Your Honors. May it please the Court, my name is Stephen Farrell, representing Petitioner-Appellant Stephen West, urging this Court to reverse the District Court's denial of Mr. West's motion to reopen his habeas proceedings under Rule 60b-6. I'd like to reserve five minutes of my time for rebuttal. You may. Thank you. Because post-conviction counsel failed to argue that trial counsel were ineffective due to conflict of interest, and further failed to ever urge the post-conviction court to review that claim under the proper federal standard, they were ineffective. Because this substantial claim strikes at the heart of the Sixth Amendment right to counsel in a death penalty case, and because the claim was timely brought, the District Court abused its discretion in failing to reopen habeas proceedings. First of all, I'd like to address an argument that Respondent first raised in their merit brief to this Court that was not raised in the District Court below, and that concerns where the default in this case occurred. In Judge Varlin's original District Court opinion, he found that the conflict of interest claim was defaulted in the post-conviction appeal. However, a careful examination of the records in this case, and we filed just earlier this week a supplement to our appendix with the original petition, because in the original petition, trial counsel in the trial court of the post-conviction case failed to ever argue the proper federal claim of conflict of interest. Certainly, post-conviction counsel had found the facts that would have supported such a claim, but counsel never advanced the proper federal standard, which at the time would have been governed by Kyler v. Sullivan, subsequently now would be governed by Mickens v. Taylor. But at the time, they never advanced that standard. Therefore, the post-conviction court never reviewed it under that standard, although the post-conviction court had many of the facts in front of it. Where the claim is not presented under the proper standard and is never reviewed under the proper standard,  and that procedural default occurred in this case in the post-conviction trial court. Therefore, Martinez is applicable to this case. So you say that what you call the default occurred because it wasn't argued well enough or properly enough, even though the post-conviction court appears to have ruled on it? What happened was the facts were certainly presented, and it must have been obvious to the post-conviction trial court that they were talking about conflict of interest. But all of this was presented as a Strickland claim and was reviewed as a Strickland claim. Therefore, when it was presented to Judge Varlan in the district court in the initial habeas proceedings, Judge Varlan found a default. Well, but I just want to make sure I'm clear here. After Martinez and Trevino, as I understand it, if a claim is adjudicated, ruled on in the post-conviction trial court, and then no appeal is taken, then Trevino doesn't kick in because the default was not in the trial court. Correct. It was at the appeal. So I'm looking at the decision, and this is paginated in many different ways, but I'm looking at page 5354 in the right-hand corner or 275, 276 at the bottom, where the post-conviction court is headed, Conflicts of Interest Denied the Petitioner the Effective Assistance of Counsel, and goes on at the end to say, The court concludes petitioners failed to meet his burden of proof with respect to this allegation. So why isn't that enough of a ruling that it should have been appealed if you didn't, you, your predecessors, didn't like the way it came out? Because that was a ruling under the Strickland standard. That's the only standard that the post-conviction trial court reviewed it under, because that was the only standard presented. And that's why I gave this court the amended petition, because that is the only standard advanced, even while trial counsel is talking about all the problems that should have given them notice that this was a conflict of interest claim and should have been governed by Kyler v. Sullivan. So if you would look at it from a pre-Martinez point of view, such a claim would definitely be defaulted. I would think that there would be almost no dispute that even though the post-conviction trial court called something a conflict of interest because the facts seemed to point that way, where it doesn't review the claim under Kyler v. Sullivan because that was never presented, that's a procedural default. So is your argument now that it doesn't matter how good a job counsel did, the trial has to be reversed because of this alleged conflict? I think right now we've got kind of two issues, both the 60B6 issue of extraordinary circumstances as well as the underlying claim. But, yes, on the underlying claim it is our ---- But 60B6 is the first hurdle. Yes. Acknowledge that. Yes, yes, the reopening under extraordinary circumstances. But to answer Judge Boggs' question, yes, it is our contention that the case should have gone back. Well, but is it, and the reason I raise this is it ties, you might say, to how extraordinary the circumstances are. And that's why I'm pressing you that it appears to me that you're saying that if you drill all the way down to the merits, the claim is not that there was anything wrong with the trial per se. Counsel could have been perfectly competent. You say you would still win because of the conflict of interest. Well, I think especially, and I just reread Mickens v. Taylor as well as Kyler v. Sullivan, which holds that where there is a conflict of interest that affected the representation, the trial is not perfect, as you said. And in this case, certainly, where the conflict of interest was that the attorney was taking direction from Mr. West's parents. And Mr. West's parents directed the attorney not to look into significant mitigating evidence of abuse that they had inflicted upon their son, that that is not a perfect trial if that's the reason that he didn't present that evidence. Well, but let's go back to, you know, we've ruled in a certain sense on the trial in terms of the ruling of no prejudice the last time it was here on a full habeas. Do you allege some additional deficiency in the trial? That is, I understand your argument about, well, they didn't present certain evidence, but essentially we hashed that through the first time. Are you alleging some additional failure to present something, which I didn't see in the briefing and I may have missed it? In other words, your claim would appear to have more logical traction if you said, and now because of the conflict, we think he should have presented some other evidence, which isn't all of the evidence that we found last time, because last time you presented a great deal of evidence that you said should have been presented the first time. Well, there was some evidence that was in the original habeas petition that this court found to be defaulted because it wasn't presented in post-conviction. And there is, so therefore there is some additional evidence. But isn't it, correct me if I'm wrong, that when we ruled that there was no prejudice we took into account? No. Which things didn't we take into account? That evidence that was never presented to the state court, this court refused to consider in its original, and in fact it's in a footnote of this opinion. Reason? Because it was never presented to the state court. Okay, go ahead. So there is some additional evidence, but I think most significantly is there's a different standard on conflict of interest because prejudice may not, traditional prejudice analysis may not be able to capture everything that counsel, that's affected by counsel. The Supreme Court instituted a different standard because it's a different type of error, that it goes more fundamentally at the constitutional right. Not only does the defendant have a constitutional right to effective counsel, but even more importantly the defendant has a right to conflict-free counsel. Is there prejudice presumed then? If it adversely affected, which is different from the reasonable probability of a different outcome under Strickland. It's a much lower standard that when the defendant can show that the trial counsel's performance was adversely affected by their conflict of interest, and I point this court to the dialogue between Mr. McConnell and Mr. West's sister and the extremely unprofessional way that Mr. McConnell dealt with Mr. West and his family, trying to get money out of them after they had already paid him $10,000 and said they had no more. That's the type of thing that's sort of hostility to the client and his family that may be harder to quantify, as Kyler V. Sullivan said in Holloway v. Arkansas, those cases that recognize that a conflict of interest may be a little bit different than just the traditional prejudice standard. You're talking to the sister, that's Debbie West? Debbie West, yes. And so I'd like to talk about the extraordinary circumstances that I think are involved in this case, and one of the things that Respondent argues is that most courts don't find extraordinary circumstances in Martina's situation, and I don't think there's anything surprising about that. Extraordinary circumstances are indeed extraordinary circumstances, and in this case, not only do we have a significant new case, but it's a significant new case, Martina's, that was put forth by the Supreme Court in order to protect the bedrock principle essential to the fair administration of justice, which is effective assistance of counsel. And in a claim where counsel was operating under a conflict of interest, that's a very significant factor to weigh in the analysis of whether this claim should be reviewed, because it's never been reviewed under the proper federal standard. There must be a case-by-case inquiry, and even though most courts find that indeed the petitioner is not presenting extraordinary circumstances, here I believe the petitioner is. Go ahead. Hannes and McGuire specifically say that Trevino and Martina's taken together are not extraordinary circumstances. By themselves, yes. And the McGuire case relies heavily on the fact that significant mitigation was presented at McGuire's trial and that the new mitigation or the mitigation that was not presented wouldn't carry much weight, was largely cumulative. Here, we go more back to the essential right that is recognized under Martina's and Trevino, and that's the role of counsel in ensuring the fair administration of justice. And where counsel is operating under a conflict of interest... We still evaluate, do we not, the import and merit of the, in this case, the evidence that you proposed never was introduced of the significant abuse that... Yes. ...the defendant suffered at the hands of his parents. Yes. And I think it's significant. But where in the evaluation, as you see it, does the heinousness or where we get to evaluate the import of that? The... And acknowledge, if you would, what we all know, that in these really horrid cases, it's hard to find one where there wasn't an upbringing that would make you cry, right? So you have to then say, how is this one at the 60 v. 6 stage? Does it also have to meet extraordinary in terms of the mistreatment of the defendant here? Well, I have a couple things to say on that, Your Honor. And first of all, when the parents who inflicted that abuse are the ones giving direction to the attorney, you can't have any confidence. And we know he followed it. Right. And that's the sin here. Right. But having followed it, do we still nevertheless need to evaluate, would it have made a difference, essentially? I think under the Supreme Court precedent, no. No. That's what Judge Moore's question, I think, was. Is it presumed? It's presumed if it adversely affected, yes. That's what we have in addition to... Okay, then I'm really going to the adversely affected. And that's... And I thought they would almost be the same thing. How bad was it? Is it the heinousness of it that makes it adversely affect the verdict or the situation? I think the adversely affected goes to the competence prong of the Strickland test that has never been evaluated. This court resolved the issue under the prejudice standard and talked about competence, but in my read of the opinion didn't actually make a conclusion on that. And none of the reviewing courts, the state courts, also relied on the prejudice prong. And the adversely affected, I think, goes much more to competence, saying did they make decisions that were incompetent based on their conflict of interest? And if they did, then yes, prejudice is presumed. That takes us back to what do you specify that counsel did not do here because of the conflict of interest that is not encompassed by the failure to investigate, the failure to find the evidence that we discussed in the original habeas? What would you point to? I can't point to any specific amount of evidence, but I think the test is just very different. And the other thing that I will point to, though, is in talking about that every client has a bad history and that there's probably also one would presume in a death penalty case there are going to be some heinous facts, we have evidence here that the attorney himself was angry at the defendant, angry at the family, and not wanting to do his job, which is a tough job in these circumstances. And when there's an added burden of these people aren't paying me and my law practice is going down the tubes, I really hate these people. And that can be communicated to the jury in an awful lot of ways. And certainly the mitigation presentation in this case at trial was extremely minimal. It just encompasses a few pages of testimony. It doesn't say anything very particular about the defendant other than some character witnesses thought he was a nice guy. To be fair, we went through that the first time, and you're sort of now saying, and correct me if I'm wrong, that you don't have any additional things that he should have found that we didn't talk about in the first time, but we should be more skeptical of any reasons that he gave or any analysis. Is that fair? I don't think so. I think we have the Supreme Court looked at these cases differently than they do in Strickland, where a good-faith, conflict-free attorney is going forward doing their best effort. And they say in these cases that it's often the prejudice that springs forth from a conflict is often very hard to quantify, but it's there. And that's why we will have a different standard in these cases, saying if we find that it affected the representation, then it was... That takes us back to what does affected the representation mean if you don't tell us something about how the representation would have been different? In other words, to be crass about it, your previous presentation was he didn't do this because he was stupid or sloppy. Now you're saying he didn't do the same things because he was stupid, sloppy, and evil. Well, in the cases like Holloway and Kyler, what the court looked at was was there a viable legal strategy that the attorney chose not to do because of the conflict? Here, we can show that because there was a valid possible legal mitigation strategy that the attorney chose not to investigate and not to present because of the conflict of interest. Let me ask you something else about the whole conflict. Because you're obviously talking as though we know that it existed. The first post-conviction court did address this and did not seem to make any factual findings that this was actually the case. Correct. So when you have a conflict that was raised and mooted, albeit in your view under the wrong standard, is it an extraordinary circumstance to try to go back 25 years and have an evidentiary hearing about whether it happened at all? I think that would be a proper response from this court is to get a finding on whether there was and to order this back to the district court to find out whether there is evidence that supports. We believe, of course, that there is, and we've presented a lot of that evidence, and I think that there would be a finding that there was indeed a conflict of interest and then evaluate the claim under the proper standard. So that is to say that despite the barriers of 60B-6, when you raise even a colorable claim or an alleged claim at this late a date, that's an extraordinary circumstance to go back and back and back. Yes, Your Honor, because in this case it goes at the heart of what was the decision in the penalty phase. When you have conflicted counsel that's conflicted on the issue of mitigating evidence, you've never had a constitutional penalty phase. And although it's certainly not dispositive, this is a death penalty case where the defendant's life is literally at stake, and the evidence was never looked into, never presented, because of the conflict of interest. And we have certainly presented abundant evidence to show that that was certainly a reason that counsel didn't look into it. And there should be some sort of finding. Certainly, before he's executed, there ought to be a finding that either counsel didn't operate under a conflict of interest, that there was a constitutional proceeding. That issue has never, ever been reviewed. Well, when you say it's never, ever been reviewed, again, we have something in the state post-conviction. Is there a reason that that was not raised as an additional reason in the straight federal habeas? I mean, it was all... It was raised in the straight federal habeas, and the district court found it defaulted because it was never presented in post-conviction. It was raised. And I think post-conviction counsel, and maybe even the post-conviction court, didn't see the forest for the trees. It was focusing on the Strickland standard, the Strickland case, and even though they had that evidence, were either unaware of the standard or simply failed to recognize it. Well, I haven't gone back and looked, and you may be right and I might be wrong here, but in terms of the briefing on the original federal habeas appeal, was that a point that was pressed? I say to use my earlier inelegant statement that it wasn't just that he was stupid, he was also evil, because I don't remember that, but I haven't gone back and checked the documents. No, it was raised, but it wasn't pressed because I think the default was fairly clear. And on the certificate of appealability, the question wasn't was the substantive claim right? It was whether the district court was wrong in defaulting it. And I think that the default is pretty clear here, and there wasn't much debate to be had. A erroneous default. I'm sorry? Erroneous default. You're saying the default was pretty clear. Right. The court didn't, the whole reason we're here today is because the court didn't delve into that. Right, that the court found it to be defaulted and did not look into the underlying claim. And it was proper to be considered defaulted then, but after Martinez. We have a basis for going back to say we can show cause and prejudice. Back in 2004, when the case was decided, we didn't have a good argument for cause and prejudice. There were some arguments made, but we couldn't say it was fairly presented and fairly resolved. We simply couldn't say that because it wasn't. It was defaulted. This is a case where the defendant told his trial judge that his attorney was following directions from his family. Raised it in the original trial. That same family that inflicted horrible abuse on him during his entire childhood. Trial counsel's own words declare that he could not work on the case without additional financial assistance from the defendant's family. The trial transcript in this case bears out that very little mitigating evidence was presented. And certainly none that would have shown the defendant's parents in a negative light. While these facts were presented by... What was shown? I don't recall what was shown. It was not parental mistreatment? Right, in the original... What was the nature of that? In the original trial, there were, I believe, three character witnesses who said the defendant was a nice guy. There was evidence presented that he was a veteran. His wife talked about what a good husband and father he was. No upbringing stuff? No, no upbringing stuff at all. None of that... Nothing that would have been contrary to the parents' wishes. This is indeed an extraordinary case where the principles of equity mandate that Rule 60b-6 operate to reopen the habeas petition to look at the original conflict of interest. You say that we could have that equity overlay even though the standard ought to be whether this is such an extraordinary character as to warrant relief. Yeah, that's part of the balancing of factors under 60b-6 is the underlying claim. The court has no further questions, so I'll reserve my time for rebuttal. Remaining time for rebuttal? Thank you, Your Honors. May it please the court, Andrew Coulombe on behalf of the respondent. I'll start off by first mentioning that this all began in March of 1986. In March of 1986, the petitioner and friend kidnapped the 15-year-old victim, Sheila Rominez, and her mother in their own home. They proceeded to rape the 15-year-old and stab her 17 times in the abdomen and also stabbed the mother a large number of times, and they died from their wounds. This all started in 1986. The petitioner has had his day in court many times over. He had, of course, his trial by jury. That was reviewed by the Tennessee Supreme Court. He had his full post-conviction review, including a full evidentiary hearing and post-conviction review. He had that reviewed by the Tennessee Court of Criminal Appeals and the Tennessee Supreme Court. He had, of course, his federal habeas review with the district court, and that was reviewed by this court as well. He's had multiple petitions for writ of cert with the U.S. Supreme Court, which were reviewed and denied. I think he's been before this court three times total, if I'm counting correctly. He's had multiple bites of this apple. But he never got the bite that counsel is pressing today, did he? I would disagree with that. His claim is that his counsel had a financial conflict of interest due to his arrangement with the petitioner's parents. That is the claim. Then he has two theories about why that constituted a conflict, and that's the theories are he wasn't being paid enough and he was refusing to do work on the case because he felt like he wasn't being paid enough. And secondly, that he had received... I'm understanding it a little differently, that because they were paying the bills and were balking at paying any more, they insisted that the defense not include evidence of their particular mistreatment of their son. That is also there. I would look at it as being both asserted in his post-conviction petition as well as federal habeas and in this particular proceeding. That the counsel had become aware, had been communicated to him by the sister, that the petitioner had received childhood abuse from the parents. And that the lawyer then refused to go forward on that because he was being paid by the parents. That's also the claim here. And I understand the claim to be that the conflict of interest claim was never raised in the trial post-conviction court. Also disagree with that. Where is it raised? It is in... The conflict of interest claim. The conflict of interest claim. Yes, Your Honor. It's in the... Let's see. I apologize. In the respondent's part of the appendix... Or is this the... I'm sorry, Your Honor. Was it raised in the petition or was it... I was stating what your opponent argued, that the conflict of interest claim was not raised in the trial post-conviction court. What I happen to be looking at... I know there are many documents we could look at. I happen to be looking at the amended petition for post-conviction relief, which was recently submitted because it's a supplemental appendix. And I don't see in that a conflict of interest claim. So I just am curious, because you said it was raised, I was just curious where you were going to tell me to look so that I could find it. Yes, Your Honor. I'm sorry. I don't have the page number in front of me. But the document. It is the document that was put in the supplemental appendix by the petitioner. There are several paragraphs, and again, I apologize, I don't have the page number right in front of me, in which the petitioner claimed that the... He claimed that his effective represent... his counsel's effectiveness and representation was contingent upon him receiving more money from the family. Perhaps, I say again, the page numbers are somewhat different, but what I have is typographical 2 through 4, that is the typescript page numbers 236 to 238. There's a lot of subsets of A1, so you have a little Romanette to little i down through at least 6, Roman 6. And my understanding of your opponent's argument is, looking at those pages, which are the ones that I've been looking at, that maybe an ineffective assistance claim is raised, but not a conflict of interest claim. And my understanding is that that's the key argument that's being made. So I'm sort of curious how you would respond, because I don't see conflict of interest, although I obviously could have missed it. I don't see it being raised as a conflict of interest claim, and I think the whole theory of your opponent's argument, in oral argument here, is that there's a different standard that applies if it's a conflict of interest claim than if it's a straight IAC claim. Yes, Your Honor. I could first address that question by saying I believe that these paragraphs, I guess that's the ones on the lower right-hand corner of page 120, depending on how you look at it, that those do constitute a conflict of interest claim. But it doesn't say conflict of interest, right? It does not. On the other hand, I think it's hard to construe it as being anything else, where they say the effectiveness in the presentation and representation petitioner was contingent upon additional fees. That enunciates a conflict of interest claim without actually using the magic words, conflict of interest. And the state post-conviction trial court was certainly reasonably looked at that and said that is a conflict of interest claim, which is exactly what it did. So it looked at this claim, it looked at the facts underlying that claim, and adjudicated it based on looking at it as a conflict of interest claim. So my understanding of your opponent's argument was that he was saying that it was not adjudicated under the standards for a conflict of interest claim, but that he was saying it was adjudicated under regular Strickland standards. So is there something that you would point to in the state post-conviction trial court's opinion that shows that the trial court understood it as a conflict of interest claim? The trial court, actually I think in the heading of that part of its decision, called it conflict of interest. So the trial court certainly considered it a conflict of interest claim, which I would disagree with opposing counsel to say that is a completely different claim to say ineffective assistance and ineffective assistance via conflict of interest are two completely separate claims. I would disagree with that. I think that ineffective assistance with a conflict of interest is simply a subset of the Strickland ineffective assistance standard. So you don't think different standards would apply in terms of evaluating a straight IAC claim where the claim is that the counsel failed to investigate, failed to make inquiries of the siblings, for instance, of the defendant, as opposed to there being a reason why this is not done, which is that the parents have told the counsel not to do that investigation. I believe the test changes only once there's been a finding that there was a conflict of interest, and then it just needs to be shown that there's some sort of adverse effect, and then the prejudice prong changes. So did the counsel for the defendant, West here, argue for a different standard for this failure of the trial counsel based on the conflict of interest due to the parents' arguable statement, don't investigate? I do not recall from the transcript of the post-conviction hearing whether his counsel, in raising the ineffective assistance via conflict of interest claim, argued about a different standard. If he did, or if he did not, let's say if he did not, then he is not raising the wrong claim. That argument is that he raised the claim badly, which falls outside of the scope of Martinez. Martinez is about not raising the claim at all. It's not about whether post-conviction counsel raised the claim before an initial review collateral proceeding, but then did so, but could have done so better. And it appears that is really sort of what the petitioner is now, in oral argument really for the first time, is now saying, is that, well, he should have cited these cases, and he should have brought these federal cases to the post-conviction court's attention. So you're saying Martinez holds that a failure of post-conviction trial counsel to raise something can be caused, but not the poor raising of an item. And is there some line in Martinez that you'd point me to, or should I just look at it in general? I believe just from the general language of Martinez, that it's simply the failure to raise the claim at all is what Martinez is all about. It's not whether once the claim has been raised, whether they did a poor job of it and then abandoned it on appeal, which appears to be the new argument that's being raised right now in oral argument, that he could have done a better job at it, and then they abandoned it on appeal, therefore we should get the benefit of Martinez. Counsel, in looking at, say, what I call 5354, where the post-conviction court discusses this, there's two fairly lengthy paragraphs, about a full page. When I go back and read it carefully now, it doesn't, within that, discuss any standards one way or the other. It says here's what they claim, here's what we had testimony, the trial counsel testified about asking for the money and never threatened not to do anything, and he communicated, and therefore the court concludes the petitioner has failed to meet his burden of proof with respect to this allegation. Is this really a finding that there's not sufficient proof of a conflict, and therefore you don't have to worry about what the standard is? Absolutely, Your Honor. That's exactly the way I read it. Somebody actually got to listen to somebody say, and I guess if I go to the transcript, maybe be cross-examined, I don't know. Do you know anything about the transcript backing of that testimony? I don't recall from the particular pages of the testimony, but you're absolutely right. Obviously he did testify. The court is stating what he said. That's correct. The testimony against that the petitioner put on was that he had threatened them, said I'm going to leave, I'm not going to represent you, I'll represent you badly perhaps. Counsel rebutted that and said no, not at all. I agree that I wanted more money. I agree that I felt like I was being underpaid, but no, I absolutely never threatened them. Was there actually any testimony on the other side or is the court just putting the allegations against the trial counsels? In other words, did the petitioner testify about what he found out or did the mother testify or anything of that sort? About whether he threatened? Yeah, right, or about the money and so on. I do not recall specifically what testimony was put on or whether it was put on. Okay, we can look it up. Go ahead. In either case, it was clear that the post-conviction court heard evidence about this, concluded that factually the petitioner had not met his burden of showing that there was a conflict of interest in this regard. So they saw the testimony, they looked at it, they said we do not see there's a conflict of interest based on the testimony before us. So the factual predicate for that aspect of the conflict of interest claim certainly was presented to the post-conviction trial court as a conflict of interest claim. As a result, this falls under Wallace, that a conflict of interest claim was raised, it was adjudicated in the initial review collateral proceeding. It is still nonetheless defaulted because they did not continue to raise that claim before the Tennessee Court of Criminal Appeals, and that's where he would have properly exhausted it. But as Wallace demonstrated, and has very good support for that in Martinez, was that failing to raise it in the post-conviction appellate court does not give you the benefit of Martinez. And that is what we have here. The petitioner is really in a difficult spot because, in essence, all the facts that he is presenting here have been already adjudicated,  and in both cases, his both theories of why he says there was a conflict of interest have been heard and have been rejected, and that is that his counsel threatened to leave because of monetary problems, or that his counsel heard that there was some sort of abuse and then refused to follow up on it because of the source of his payments from the family. That, too, was heard in state court, and there was conflicting testimony, one from the sister, but also from counsel, both counsel, including counsel who was not being paid by the parents. Both of them strongly and vigorously denied that they had ever... The petition at 119 in Roman 1 at the bottom makes the allegation that the attorney informed petitioner that any and all decisions pertaining to his case would be made by his family members, which certainly sounds like an atrocious conflict of interest. Was there testimony on that portion as opposed to the monetary portion? I believe that may have been part of the sister's testimony, that she said that according to her, counsel had said, no, no, no, I believe they are directing this. If we looked at the sister's testimony in the state post-conviction, presumably it was cross-examined on that point? I believe so, Your Honor, and it was countered by testimony by both counsel, both the lead counsel and co-counsel. Also in cross-examination with the sister, it was brought up that she was asked, under oath, at the sentencing hearing, has there been any problems between the petitioner and his family? And she responded, no. That's at the sentencing hearing. Then does she say something different at the post-conviction? That's correct, Your Honor. In post-conviction, she says, oh, no, there were definitely problems here because they had committed child abuse on him for years. But that wasn't her testimony at trial, at the sentencing hearing at trial. Her testimony was there had been no problems between the petitioner and his family. Does the post-conviction trial court address that conflict in terms of her testimony at the two different events? Yes, Your Honor. I believe they reference it, at least in the facts section. I forget whether they did so in the analysis section, but they certainly address that. It's certainly referenced, at least in the CCA's opinion, in the Tennessee Court of Criminals. Because the pages 53 and 54 seem to be going more to the $5,000 amount issue as opposed to the question about not wanting to put on any evidence of abuse, which seems to be a concerning area. It's been presented from the state court, and certainly ever since then, as a single claim, that there was a conflict of interest by the nature of the arrangement with the family. He has sort of two theories about why that constituted a conflict of interest, but he always raises it as a single claim. And it's true that before the post-conviction court, what was presented to them was only one of the theories, which was that he wasn't being paid enough and was trying to withdraw. Oh, that was the only issue that was presented to the post-conviction court? In the trial court. It was presented that they were controlling the litigation, but specifically as to the child abuse aspect. I did not see that in the petition or amended PC petition specifically, or that that was addressed specifically in that section of the PC court's opinion. And yet it's still the same claim. It's just a different theory about how we get to a conflict of interest. Although it spends more words on the 5,000, it begins by saying petitioner alleges the trial counsel informed him that all decisions were made by the family. That's correct. But not as part of that section of the analysis. The post-conviction court did go on to say, well, there has been a claim that they did not pursue the child abuse claims. And the underlying facts with it were certainly adjudicated, and the facts were rejected in essence. So there's conflicting testimony about whether the counsel was told about this abuse and what they did in result. And they said he hasn't met his burden of showing that this actually happened. And this court in its 2008 opinion affirmed that in saying that his counsel denied being told of the abuse. His counsel, had they known about it, they could have done something, perhaps something different. And then there's a prejudice analysis. But this 2008 opinion certainly goes into and under the understanding that his counsel was never actually told about this. And that is a fact that, I mean, that is an adjudication that was in essence decided by the post-conviction court and decided by this court. And in order for there to have been a conflict of interest under this particular theory, the child abuse would have had to have been communicated to the counsel. Because it's only from them understanding that this was an issue and then refusing to follow up on it because of the financial conflict of interest would there be any kind of conflict of interest. If there's no communication, there's no conflict. If there's no conflict, there's no claim. So there's, it's hard at the very least for the other side to say, this is an extraordinary claim that mandates relief. And this is what he must, he must show that under the Rule 60b-6 standard. And he must show that the district court abused its discretion in doing the multi-factor test. I mean, given the fact that the claim, as a general matter, was raised before the post-conviction court, but not before the post-conviction appeal, Wallace would seem to preclude any applicability of Martinez even applying here. Given the fact that the factual bases for his claim were rejected in the state court, and even that was affirmed even here on appeal, that would make it, certainly not make it an extraordinary circumstance. In Martinez itself, this court found that Martinez, or sorry, excuse me, in McGuire, said that Martinez unto itself does not constitute an extraordinary circumstance. So it is difficult to fathom how we have an extraordinary circumstance here. And given that, and given, as McGuire allowed for, that this case has been pending for a long time. It has received thorough review. It has been thoroughly litigated many times. There is not a single factor under McGuire, that McGuire looked at, that would appear to fall under, in the petitioner's favor here. And if there's not a single factor we can identify that would fall in his favor, it's difficult also to fathom how the district court, doing a multi-factor, engaging a multi-factor test, abused its discretion in denying the Rule 60B6 motion. If there are no further questions from the court, I would ask that the ruling of the district court be affirmed. Anything else, judges? Thank you. Thank you. Farrell, you have five minutes for rebuttal. Or any remaining time, if you have a little extra. Thank you, Your Honor. First of all, I want to, I find it very interesting that counsel for respondents says that this claim was globally presented to post-conviction, and that's kind of good enough. Because in the habeas proceedings, the initial habeas proceedings, that was our argument that it wasn't defaulted. We tried to say that. It was kind of there, and it ought to be addressed. The district court, first of all, the state said it wasn't addressed, that general language isn't enough, and the district court found that it wasn't. So they're kind of reversing their strategy in order to say there is no default after they already said there was a default. And for a change, we're saying there is a default. So it's kind of a strange world we're all in. That's a toss-up. Let's go to the right side of the law. Exactly. Did I hear you say that the lower court said it was or wasn't? I thought I heard you say wasn't. That it was defaulted. The district court found default. This federal district court? Yes, this federal district court found default. Thank you. Also, Judge Boggs, in particular, you were pointing to the language of the post-conviction trial court in which it kind of addressed the facts of the conflict of interest. I want to point out that this court, in its 2008 opinion, found that opinion to be contrary to clearly established Supreme Court law. So that opinion is there, but it makes no explicit findings of fact. And just prior to talking about conflict of interest, in the little section labeled conflict of interest, it talks about the Strickland Standard and misapplies it. And this court recognized that. And that's the only federal standard that it considers. So not only did it not apply the Kyler v. Sullivan Standard, it misapplied the Strickland Standard. And there are no findings of fact. There's kind of a vague statement that he failed at his burden, but there is nothing talking about Debbie West's testimony. In no place does the post-conviction court recognize that Stephen West made these allegations in the original trial, wrote a letter to Judge Asbury saying that his parents were directing the decisions, and Judge Asbury refused to act on it. So these allegations have not just been around since post-conviction. There's been talk of it since the very trial. And furthermore, in federal habeas, which was... the strongest on your side, doesn't come up until the post-conviction. Yes. Yes. Debbie West's testimony comes up in the post-conviction. And in the habeas piece of evidence that this court, as well as the district court, found to be defaulted because it wasn't presented in state court, the petitioner's father presented an affidavit saying that indeed they directed, in particular his wife, directed counsel's actions. So there's lots of evidence that points to that fact that raises the conflict of interest. And certainly the state court did not make explicit findings of fact and certainly no explicit negative findings of fact. That's one of the reasons why we believe this would be the proper case for a full evidentiary hearing in the district court to resolve that issue. So this was presented. The facts were hovering all around the post-conviction, but post-conviction counsel was ineffective for not using their skill and knowledge and training to present the proper standard. That's what the state said in habeas proceedings below. Not that they were ineffective, but that they never presented the claim. And that's because they didn't. And so what you just said about they didn't use their skill, knowledge, and training to present the proper standard. Right. To recognize... Meaning Keiler as opposed to Strickland? Yes. They recognized facts that would give rise to conflict of interest. That was because the mother was telling them to? No, no, no. I'm talking about in post-conviction. They certainly saw the facts that would have supported a conflict of interest claim, but never argued it as a conflict of interest. Your opponent argues that that is not a Martinez violation. I disagree. I believe that that is because that's what caused the default. And when it wasn't properly presented, Martinez says that ineffective assistance of post-conviction counsel, if it's failing to properly present or raise an ineffective assistance of counsel claim, that is Martinez. And that's what Martinez and Trevino say should be adjudicated in federal court  And you're rejecting Brother Counsel's reading of Martinez to foreclose a should-have-argued-better. And I don't think it is a should-have-argued-better because I think it's a distinct claim. Just as in habeas district court below... You disagree that this is about should-have-argued-better. Exactly. Yes. I disagree that it's about should-have-argued-better. I believe it's about they should have recognized what the real claim was, that the real claim was a conflict of interest. Is that a real difference or is that just an articulation? Well, I'll say... One gets you there and one doesn't. Well, no, but the district court below in the original habeas made a distinction. It said ineffective assistance of counsel is not defaulted, but conflict of interest is defaulted. So... Counsel, I think your time is up. Oh, I'm sorry. Unless my colleagues have any further questions. You've got lots of time. Just answering mine. You finished? Anything else? Appreciate your time. We ask that you... Counsel, the case will be submitted. The clerk may adjourn court.